# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **RALPH C. GREGG,**<br>Plaintiff | ) <br> ) <br> ) | Civil Action No. 2:20cv00016 |
| v. | ) <br> ) <br> ) | **MEMORANDUM OPINION** |
| **KILOLO KIJAKAZI,**[1]<br>**Acting Commissioner of Social Security,**<br>Defendant | ) <br> ) <br> ) <br> ) | By:  PAMELA MEADE SARGENT<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff Ralph C. Gregg, ("Gregg"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 423 *et seq.* Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

-1-

consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows Gregg protectively filed an application for DIB on January 18, 2017, alleging disability as of February 20, 2015,[2] due to left big toe amputation, diabetes, crushed right foot, hypertension, high cholesterol, depression, anxiety and stroke. (Record, ("R."), at 172, 771-72, 794.) The claims were denied initially and on reconsideration. (R. at 651-67, 669-86.) Gregg requested a hearing before an administrative law judge, ("ALJ"). (R. at 708-09.) A hearing was held on February 13, 2019, at which Gregg was represented by counsel. (R. at 597-627.)

By decision dated April 4, 2019, the ALJ denied Gregg's claim. (R. at 172-83.) The ALJ found Gregg met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2017. (R. at 175.) The ALJ found Gregg had not engaged in substantial gainful activity from February 20, 2015, the alleged onset date, until his last insured date, December 31, 2017. (R. at 175.) The ALJ determined Gregg had severe impairments, namely overweight status; diabetic neuropathy and Charcot feet;[3] partial amputation of the left toes and partial hallux

---

[2] Gregg's application listed his alleged onset date of disability as May 7, 2012. (R. at 771.) Gregg's alleged onset date was amended at his hearing before the ALJ, (R. at 614-15), based on the fact that he had filed a previous application for DIB that was denied by opinion dated February 19, 2015. (R. at 631-43.)

[3] Charcot foot is an inflammatory process affecting the soft tissues, bones and joints of the foot or ankle. It can cause numbness and weakens the bones in the feet, making them prone to fractures and dislocation. Due to numbness, pain can go unnoticed, leading to additional damage from walking and standing. The shape of the foot may change due to dislocated or collapsed joints,

amputation of the left foot; status-post irrigation and debridement of the right foot; hypertension; anxiety; and depression, but she found Gregg did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 175-76.) The ALJ found Gregg had the residual functional capacity to perform sedentary[4] work that did not require more than frequent balancing, exposure to extreme heat/cold and vibration; no more than occasional climbing of ramps and stairs, stooping, kneeling, crouching, crawling and interaction with supervisors, co-workers and the public; and did not require climbing ladders, ropes or scaffolds or exposure to unprotected heights or danger moving machinery. (R. at 176-81.) The ALJ also found that Gregg could understand and remember simple instructions, sustain attention and concentration to complete simple tasks with regular breaks every two hours and adapt to routine work conditions and occasional workplace changes that are gradually introduced. (R. at 176-81.) The ALJ found that Gregg could not perform any of his past relevant work. (R. at 181.) Based on Gregg's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Gregg could perform, including the jobs of a sorter, an inserter and an addresser. (R. at 181-82.) Thus, the ALJ concluded Gregg was not under a disability as defined by the Act, and he was not eligible for DIB benefits. (R. at 182.) *See* 20 C.F.R. § 404.1520(g) (2020).

---

and Charcot foot also can cause sores that are hard to heal. If left untreated, Charcot foot can lead to severe deformity or amputation. *See* healthline.com/health/charcot-foot#about (last visited Mar. 7, 2022).

[4] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2020).

After the ALJ issued her decision, Gregg pursued his administrative appeals, (R. at 769-70), but the Appeals Council denied his request for review. (R. at 1-3.) Gregg then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2020). This case is before this court on Gregg's motion for summary judgment filed April 9, 2021, and the Commissioner's motion for summary judgment filed May 7, 2021.

## *II. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2020). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2020).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *McLain v. Schweiker*, 715

F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Gregg argues the ALJ erred by failing to find that his impairment met or equaled the listed impairment for endocrine disorders found at Part 404, Subpart P, Appendix 1, § 9.00, ("Listing 9.00"). (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-5.) Gregg also argues the ALJ erred by improperly determining his residual functional capacity. (Plaintiff's Brief at 5-6.)

Gregg specifically argues that the ALJ erred by failing to consider whether his diabetes and its effects met or equaled Listing 9.00. Listing 9.00 for endocrine disorders states that these disorders are evaluated under the listings for other body systems. *See* 42 C.F.R. Pt. 404, Subpt. P, App. 1, § 9.00(B) (2020). Gregg does not argue which listing for other body systems the ALJ should have considered. Nor does he argue which listing for other body systems his impairments met. Despite finding that Gregg suffered from the severe impairment of diabetic neuropathy, the ALJ's opinion contains no analysis of whether Gregg's impairment met the listed impairment for neurological disorders. Instead, the ALJ's opinion simply states: "The claimant did not argue conformity with a particular physical listing nor did the undersigned's independent review of the record reveal sufficient medical documentation to substantiate a physical impairment of listing level severity." (R. at 175.) The court's review of the record demonstrates that this finding is not supported by substantial evidence.

Listing 9.00 states that diabetic neuropathy was to be evaluated under Listing 11.00 for neurological disorders. *See* 42 C.F.R. Pt. 404, Subpt. P, App. 1, §

9.00(B)(5)(b). Listing 11.14 addresses peripheral neuropathy. *See* 42 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14 (2020). This listing requires, in part, disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position or in the ability to balance while standing or walking; or a marked limitation in physical functioning in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself. *See* 42 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.14. Gregg has pointed to no medical evidence contained in the record to support that his impairment met either prong of this listing. Nevertheless, based on the court's review of the evidence, it appears that the consultative examination by Dr. William Stafford, M.D., on April 22, 2017, (R. at 2354-56), might support a finding that Gregg's peripheral neuropathy met Listing 11.14.

Dr. Stafford noted that Gregg had suffered from diabetes since 2005, which had been very difficult to control and had resulted in severe, bilateral diabetic foot neuropathy. (R. at 2354.) Gregg also reported that he suffered from multiple, nonhealing foot ulcers with severe, bilateral foot pain and neuropathic joints requiring multiple surgeries for both repair of deformities, as well as debridement of ulcers. (R. at 2354.) Gregg reported that he could lift 15 to 20 pounds once and five to 10 pounds repetitively. (R. at 2354.) He said he performed his own personal hygiene and some limited cooking, cleaning, shopping and driving. (R. at 2354.) He said that he could walk for five to 10 minutes, stand for five to 10 minutes and sit for 10 to 15 minutes. (R. at 2354.)

Dr. Stafford noted that Gregg was 6 feet tall and weighed 245 pounds. (R. at 2355.) Gregg had undergone left great toe amputation with surgical hardware in his left foot. (R. at 2355.) He noted that Gregg walked using prescribed, bilateral arm

crutches. (R. at 2355.) On physical examination, Dr. Stafford noted that Gregg appeared in no acute distress, demonstrated a severe right limp, moved at a slow pace without holding onto the wall and had difficulty getting on and off the examining table. (R. at 2355.) Dr. Stafford noted multiple prior surgical incisions on Gregg's feet due to ulcer debridement and bony reconstruction. (R. at 2355.) On neurologic examination, Dr. Stafford noted that Gregg's deep tendon reflexes were 2+ throughout, with the exception of absent bilateral L5-S1 reflexes at the ankles. (R. at 2356.) He noted 5/5 strength in the bilateral upper extremities, 5/5 bilateral grip strength in the hands, 4/5 in bilateral foot dorsiflexion and plantar flexion, and 5/5 strength in the lower extremities, proximally. (R. at 2356.) Dr. Stafford noted that Gregg's sensation was severely decreased to light touch in his bilateral lower extremities from his toes to his mid-calf area. (R. at 2356.) He stated that Gregg was unable to kneel or squat without significant difficulty, but he could heel-to-toe or tandem walk. (R. at 2356.) He also noted significantly limited bilateral ankle and dorsiflexion range of motion to roughly 10 degrees. (R. at 2356.)

 Dr. Stafford opined that, based on his examination, Gregg likely would have significant difficulty performing tasks that involved more than brief periods of standing, walking or carrying objects. (R. at 2356.) He stated that seated work, to include handling small objects with both hands, likely would be better tolerated. (R. at 2356.) Dr. Stafford stated that Gregg demonstrated significant neurologic deficit with decreased sensation and strength in his lower extremities, and he had some moderate gross motor dysfunction with loss of proprioception, weakness and numbness in his feet, bilaterally, requiring the use of a cane. (R. at 2356.)

 Thus, Dr. Stafford's report provides evidence that Gregg exhibited difficulty balancing while standing or walking, in that he noted that Gregg had to hold onto

the walk to walk or needed to use crutches or a cane. It also provides evidence that Gregg was limited in his ability to stand up from a seated position, in that Dr. Stafford stated that Gregg had difficulty getting off the examining table. The ALJ's opinion, however, makes no mention of this evidence of this listed impairment. Nor does it perform any analysis of whether this evidence is sufficient to meet Listing 11.14. In determining whether substantial evidence supports the Commissioner's decision, the court must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). Without any analysis of this evidence by the ALJ, the court cannot find that substantial evidence supports the ALJ's finding that Gregg's impairment did not meet Listing 11.14.

The court further notes that the Veterans Administration Medical Center, ("VAMC"), reports contained in the record support a finding that Gregg's ability to balance and to walk were limited, in that there are multiple notes reflecting that Gregg was considered at a high risk for falls. (R. at 893, 899, 907, 915, 924, 936, 944, 952, 1458.) In fact, much of this period of time, Gregg was advised to be non-weight-bearing in a wheelchair as a result of various surgeries on his feet. A March 29, 2016, examination at the VAMC by Dr. Shahab M. Ehtesham, M.D., confirmed that Gregg suffered from a loss of sensation in his feet and about two-thirds of the way up both shins. (R. at 1783-84.)

A veteran's disability evaluation was performed by Dr. William E. McGrady, II, M.D., on Gregg on February 16, 2018, based on bilateral degenerative joint disease of his feet. (R. at 2360-73.) In addition to bilateral joint disease, the report listed that Gregg had suffered from Charcot feet with diabetic ulcers since at least

August 29, 2017. (R. at 2361.) Gregg reported intermittent right foot pain with a history of reconstruction surgery in 2015 for Charcot foot with the application of external fixator. (R. at 2361.) Dr. McGrady noted that Gregg was prescribed a right foot rigid brace to wear. (R. at 2361, 2364.) Gregg reported right foot pain with prolonged walking or standing. (R. at 2361.) Gregg reported surgery to his left foot in 2017 for Achilles lengthening, 4th metatarsal floating and left hallux amputation due to Charcot foot. (R. at 2361, 2364.) He said that he had left foot pain with prolonged walking or standing. (R. at 2361.) Gregg reported that he served in the infantry and carried heavy weapons and ammunition during his military service from 1992-94. (R. at 2361.) Gregg stated that it felt as if "cinder blocks [were] tied to his feet." (R. at 2361.) Gregg reported that he could not "hardly" walk without a brace and cane. (R. at 2362.) He said that prolonged standing caused increased foot pain, bilaterally. (R. at 2362.) The report stated that Gregg also suffered from bilateral foot neuropathy and cellulitis due to diabetes/Charcot foot. (R. at 2364.)

Dr. McGrady stated that the condition of Gregg's feet was moderately severe and chronically compromised his weight bearing. (R. at 2364.) Dr. McGrady noted bilateral foot pain upon examination that contributed to functional loss. (R. at 2365.) Dr. McGrady stated that Gregg's foot impairment interfered with his ability to stand and walk. (R. at 2365.) Dr. McGrady stated that Gregg suffered from pain, weakness, fatigability or incoordination that significantly limited his functional ability during flare-ups or when his feet were used repeatedly over a period of time. (R. at 2365.) Dr. McGrady also noted that Gregg regularly needed the assistive devices of a cane and a rigid right foot brace to assist with normal locomotion. (R. at 2367.) Dr. McGrady also stated that Gregg's degenerative joint disease of his feet impacted his ability to perform occupational tasks, in that his bilateral foot pain affected his ability to stand and walk. (R. at 2371-72.) He stated that his examination revealed evidence

of pain in Gregg's feet on passive range of motion and when the joints were nonweight-bearing. (R. at 2372.)

Furthermore, Gregg testified at his hearing that he uses a "forearm crutch" or a cane to walk because he does not "hardly have any balance…." (R. at 608.) Gregg said that he lost his balance when his left great toe was removed. (R. at 608.) Regarding his assistive device, Gregg said, "I definitely have to use it or I'll, if I walk I'll fall." (R. at 608.) Gregg testified that he was in the hospital from July to October after his right foot reconstruction surgery in 2015. (R. at 612.) After his release, Gregg said, he was completely nonweight-bearing and in a wheelchair for about a year. (R. at 613.)

Based on this, I find substantial evidence does not exist to support the ALJ's finding that Gregg was not disabled. An appropriate Order and Judgment will be entered.

DATED:   March 7, 2022.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE